IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

CITY OF BRUNSWICK, by and         *
through its MAYOR AND BOARD OF     *
COMMISSIONERS,                    *
                                  *
       Plaintiff,                 *           CV 222-132
                                  *
          v.                      *
                                  *
HONEYWELL INTERNATIONAL, INC.,    *
formerly known as ALLIED          *
CHEMICAL CORPORATION, and as      *
ALLIEDSIGNAL, INC., and THE       *
GEORGIA POWER COMPANY,            *
                                  *
       Defendants.                *
                                  *

---

## O R D E R

Presently before the Court is Plaintiff City of Brunswick's (the "City") motion to remand (Doc. 21) and Defendants Honeywell International, Inc. f/k/a Allied Chemical Corporation and as AlliedSignal, Inc. ("Honeywell") and Georgia Power Company's ("Georgia Power") request for hearing (Doc. 26). For the following reasons, the City's motion to remand is **GRANTED**, and Defendants' request for hearing is **DENIED**.

## I. BACKGROUND

On October 20, 2022, the City filed suit in the Superior Court of Glynn County, Georgia, alleging claims of continuing trespass

and continuing nuisance against Defendants. (Doc. 1-1, at 158-162.) According to the City, the conduct underlying its claims is that Defendants polluted the waters and marshlands on and abutting the City's property when Honeywell released mercury and Aroclor 1268 poly-chlorinated byphenals ("PCBs") and Georgia Power released mercury.[1] (Id. at 154-55.) Based upon this, the City seeks punitive damages and litigation costs. (Id. at 162.)

On November 18, 2022, Defendants filed their notice of removal pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1442(a), and 1446. (Doc. 1, at 1.) On December 19, 2022, the City filed the present motion asking the Court to remand the action because Georgia Power was not fraudulently joined, and there is no federal officer or federal question jurisdiction. (Doc. 21; Doc. 21-1, at 1.) The motion was timely filed within thirty days of removal pursuant to 28 U.S.C. § 1447. Defendants filed responses in opposition to the City's motion (Docs. 24, 25),[2] the City filed a reply in further support (Doc. 32), Defendants filed sur-replies in opposition (Docs. 35, 36), and the City filed a reply to Georgia Power's sur-reply (Doc. 38). Defendants also filed a motion for oral

---

[1] Even though the Complaint refers to Honeywell and Georgia Power collectively as Defendants, the Complaint does not allege that Georgia Power also released PCBs. (See Doc. 1-1, at 154-55.) Accordingly, the Court will refer to mercury and PCBs as "pollutants" when addressing the conduct of Honeywell and Georgia Power collectively as Defendants and just mercury when addressing the conduct of Georgia Power.

[2] Although Honeywell and Georgia Power respond to the City's motion to remand separately, each incorporates the arguments of the other. (See Doc. 24, at 23; Doc. 25, at 12 n.4.) Accordingly, the Court will address the arguments as being raised by both Defendants.

argument on the motion pursuant to Local Rule 7.2.    (Doc. 26.) Accordingly, the motions are properly before the Court.


## II. DISCUSSION

The Court addresses each motion below.

### A. Motion to Remand

The City moves to remand this case back to the Superior Court of Glynn County.  (Doc. 21, at 1.)   "Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree."  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (internal citations omitted).  As such, a defendant may only remove an action from state court if the federal court would possess original jurisdiction over the subject matter.  28 U.S.C. § 1441(a).

Federal district courts have jurisdiction over all civil actions: (1) "arising under the Constitution, laws, or treaties of the United States"; and (2) "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." 28 U.S.C. §§ 1331, 1332.  Further, district courts have jurisdiction over an action "against or directed to . . . [t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an

3

official or individual capacity, for or relating to any act under color of such office . . . ." 28 U.S.C. § 1442(a)(1).

On a motion to remand, the removing party bears the burden of establishing federal jurisdiction. Williams v. Best Buy Co., 269 F.3d 1316, 1319 (11th Cir. 2001).  It is well established that removal jurisdiction is construed narrowly with all doubts resolved in favor of remand.  Mann v. Unum Life Ins. Co. of Am., 505 F. App'x 854, 856 (11th Cir. 2013) ("[W]e strictly construe removal statutes, resolving all doubts in favor of remand.").  In evaluating a motion to remand, the Court makes its "determinations based on the plaintiff's pleadings at the time of removal; but[,] the court may consider affidavits and deposition transcripts submitted by the parties."  Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997) (citation omitted).

Defendants rely on three grounds for removal and contend each ground provides an independent basis for federal subject matter jurisdiction over the case: (1) federal officer removal jurisdiction under 28 U.S.C. § 1442, (2) federal question jurisdiction under 28 U.S.C. § 1331, or (3) diversity jurisdiction under 28 U.S.C. § 1332(a).  (Doc. 1, at 8-9.)  The City argues remand is proper because none of these grounds provide a basis for federal subject matter jurisdiction.  (Doc. 21, at 1.)  The Court addresses each ground below.

4

1. <u>Federal Officer Removal Jurisdiction (28 U.S.C. § 1442)</u>

First, Defendants rely on the federal officer removal statute as a ground for removal. (Doc. 1, at 8-18.)  Specifically, they argue there is federal officer removal jurisdiction because "the City's claims are 'connected or associated with' Defendants' decades-long investigation and remediation of environmental contamination . . . under the direction and oversight of [the United States Environmental Protection Agency ('EPA')]." (<u>Id.</u> at 8.)  In its motion for remand, the City argues there is no federal officer removal jurisdiction.  (Doc. 21-1, at 14.)  Specifically, the City argues Defendants are not "<i>de facto</i> Federal Officer[s]" because "[t]he toxic releases from the industrial plants of [Defendants] all occurred before there were any [Comprehensive Environmental Response, Compensation, and Liability Act ('CERCLA')] enforcement actions by the [EPA, and n]either Defendant was a government contractor, manufacturing a product for the government according to government specifications." (<u>Id.</u>)

Removal pursuant to the federal officer removal statute, 28 U.S.C. § 1442, establishes an independent basis for the exercise of federal jurisdiction.  <u>Magnin v. Teledyne Cont'l Motors</u>, 91 F.3d 1424, 1427 (11th Cir. 1996) (citing <u>Willingham v. Morgan</u>, 395 U.S. 402, 406 (1969)).  In other words, the subject matter jurisdiction established by 28 U.S.C. § 1442 "is an incident of federal supremacy and is designed to provide federal officials

5

with a federal forum in which to raise defenses arising from their official duties." <u>Caver v. Cent. Ala. Elec. Coop.</u>, 845 F.3d 1135, 1142 (11th Cir. 2017) (quotation and citation omitted).

Because Defendants are not federal officers or agencies, they must satisfy a three-pronged test to rely on 28 U.S.C. § 1442 for subject matter jurisdiction. <u>Id.</u> First, Defendants must show they are "person[s] within the meaning of the statute who acted under a federal officer." <u>Id.</u> (citation omitted). Second, they "must show that [they] performed the actions for which [they are] being sued under color of federal office." <u>Id.</u> (citation omitted). Stated differently, they "must show a causal connection between what [they have] done under asserted official authority and the action against [them]." <u>Id.</u> (citation omitted). Third, they "must raise a colorable federal defense." <u>Id.</u> (citation omitted). Defendants argue they satisfy the three-prong test, and the City disagrees. (Doc. 1, at 10-18; Doc. 21-1, at 14-25; Doc. 25, at 12 n.4.)

First, the Court looks at whether Defendants were persons "acting under" a federal officer when they polluted "the waters and marshlands on and abutting property of [the City]." (<u>See</u> Doc. 1-1, at 155.) The City does not argue that Defendants are not persons within the meaning of the statute, but instead, it argues "Defendants have not shown that they 'acted under' a federal officer when they released their contamination to the environment

6

on and about the City's property." (Doc. 21-1, at 20.) Specifically, the City argues Defendants "fail[] to demonstrate that either Defendant ever manufactured products using PCBs and mercury (1) under a direct contract with the United States government, (2) under any particular government specification for PCBs, or (3) under 'direction' from any federal officer." (Id.) According to Defendants, they "'acted under' federal officers because the federal government exerted extensive 'subjection, guidance, or control' over Defendants' remediation of the [Linden Chemicals and Plastics Corp. ('LCP Chemicals')] Superfund Site[3] and because Defendants engaged in 'an effort to assist, or to help carry out, the duties or tasks of the federal superior." (Doc. 1, at 10-11 (emphasis and citation omitted, footnote added).) Defendants contend their remedial efforts were not mere compliance with EPA regulations but rose to the level of assisting the federal government because if they did not perform the investigation and remediation the EPA "at least arguably" would have had to do it under CERCLA. (Id. at 11-12; Doc. 24, at 8.) Defendants argue "federal appellate courts have concluded that private corporations act under federal authority when they perform EPA-directed cleanups" by relying on two unpublished opinions. (Doc. 1, at 12

---

[3] CERCLA "directs [the] EPA to compile and annually revise a prioritized list of contaminated sites for cleanup, commonly known as Superfund sites." Atl. Richfield Co. v. Christian, 140 S. Ct. 1335, 1346 (2020) (citing 42 U.S.C. § 9605).

(citing <u>Greene v. Citigroup, Inc.</u>, No. 99-1030, 2000 WL 647190, at *1-2 (10th Cir. May 19, 2000); <u>California v. H & H Ship Serv. Co.</u>, No. 94-10182, 1995 WL 619293, at *2 (9th Cir. Oct. 17, 1995)) (quotation marks omitted and alterations adopted).) Specifically, Defendants contend the City's claims are similar to those in <u>Greene</u> where the Tenth Circuit "held that the private corporation acted under the direction of a federal officer by implementing a remedy selected by the EPA, a federal agency, pursuant to CERCLA." (<u>Id.</u> (quoting <u>Greene</u>, 2000 WL 647190, at *1-2 (quotation marks omitted and alterations adopted)).)

The Court finds Defendants fail to satisfy the first prong in demonstrating they were "acting under" a federal officer when they allegedly released pollutants in the waters and marshlands on and abutting the City's property. In <u>Watson v. Philip Morris Cos.</u>, the Supreme Court provided the "acting under" language is broad, and "the statute must be liberally construed," however, this "broad language is not limitless." 551 U.S. 142, 147 (2007) (citations and internal quotation marks omitted). According to the Supreme Court, "[i]n this context, the word 'under' must refer to what has been described as a relationship that involves 'acting in a certain capacity, considered in relation to one holding a superior position or office,' . . . [which] typically involves 'subjection, guidance, or control.'" <u>Id.</u> at 151 (citations omitted). Moreover, the Supreme Court stated that "precedent and statutory purpose make

clear that the private person's 'acting under' must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." Id. at 152 (citing Davis v. South Carolina, 107 U.S. 597, 600 (1883)) (emphasis in original).   The Supreme Court then found the federal officer removal statute did not apply because "a federal regulatory agency direct[ing], supervis[ing], and monitor[ing] a company's activities in considerable detail" was not enough to establish the company was "acting under" a federal officer. Id. at 145.   Therefore, simply complying with a federal law or regulation is insufficient to invoke federal officer jurisdiction, even if the regulatory scheme is "highly detailed" and the defendant's "activities are highly supervised and monitored." Id. at 153.   However, "[t]he assistance that private contractors provide federal officers goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks." Id.

Here, Defendants do not argue they were private contractors hired by the federal government to complete tasks; instead, they contend they were acting under the EPA because their remediation efforts were "under the close supervision of the federal government." (Doc. 1, at 13.)   However, the EPA supervising Defendants' activities is not sufficient to demonstrate they acted under a federal officer. See Watson, 551 U.S. at 153.   Moreover, Defendants' reliance on Greene and H & H Ship Serv. Co. is

unavailing.   (See Doc. 1, at 12 (citations omitted).)   First, in Greene, the activity that allegedly violated the interstate compact was the implementation of the remedy ordered by the EPA. See Greene, 2000 WL 647190, at *1.   Here, the City is not alleging the implementation of the remediation efforts violated Georgia law or caused the pollution.   (Doc. 21-1, at 18-19; see generally Doc. 1-1.)   Second, in H & H Ship Serv. Co., the court found the private defendant "acted under" a federal officer where it was hired to clean up a hazardous spill because the conduct that allegedly violated state law was done while "the defendants were present at the site in order to execute a removal that was under the direction and control of a federal officer."   See H & H Ship Serv. Co., 1995 WL 619293, at *1-2.   Here, the City argues Defendants released pollutants even before the EPA was involved, and the Complaint does not allege the pollution was done under the direction and control of the EPA.   (Doc. 21-1, at 14; see generally Doc. 1-1.) Contrary to the cases Defendants rely on, in Morgan v. Ford Motor Co., a district court relied on Watson and found the federal officer removal statute did not apply where the defendant argued it was acting under a federal officer "because its conduct was governed by a series of administrative consent orders and it was doing exactly what the [EPA] told it to do . . . ."   CIVA No. 06-1080, 2007 WL 2137831, at *1 (D.N.J. July 23, 2007).   Accordingly, Greene and H & H Ship Serv. Co. are inapplicable to the present

case because as the City argues, "Defendants have not identified how the Consent Decree,[4] federal regulations, or federal officers required them to cause [the] pollution." (Doc. 21-1, at 18-19 (footnote added).)

Therefore, the Court finds Defendants fail to satisfy the first prong in demonstrating they were "acting under" a federal officer, namely the EPA, when they released pollutants into the waters and marshlands on and abutting the City's property. Accordingly, the Court does not address whether Defendants satisfy the second and third prong, and the Court finds the federal officer removal statute does not apply.

2. Federal Question Jurisdiction (28 U.S.C. § 1331)

Second, Defendants rely on federal question jurisdiction as a ground for removal. (Doc. 1, at 8, 18-25.) Specifically, they argue the City's claims "necessarily involve substantial and disputed federal questions . . . because they constitute a challenge to a federally directed environmental cleanup under CERCLA and because they seek contribution for response costs under CERCLA." (Id. at 8.) According to Defendants, the City's claims "implicate and threaten to interfere with the ongoing

_____

[4] The Consent Decree resulted from another action where the United States brought suit against Honeywell and Georgia Power pursuant to CERCLA, seeking injunctive relief and recovery costs. (United States v. Honeywell Int'l Inc. and Georgia Power Company, No. 2:16-cv-112, Doc. 1 (S.D. Ga. July 27, 2017).) On July 27, 2017, the Court approved the "Consent Decree for Remedial Design and Remedial Action at Operable Unit One of the LCP Chemicals Superfund Site." (Id., Doc. 26.)

implementation of a CERCLA cleanup that Defendants are performing under [the] EPA's direction," and "this Court is the proper forum to address the City's claims challenging the sufficiency of Defendants' remedial efforts under the Consent Decree." (Id. at 21-22.)  In its motion to remand, the City argues there is no federal question jurisdiction for several reasons: (1) "[n]o federal questions appear on the face of the City's Complaint"; (2) "[t]he City has not alleged that Defendants are in violation of any federal law"; (3) "[n]o element of the City's state law trespass and nuisance claims necessarily raise any issue of federal law that is an element of either of those claims"; (4) "[t]he lawsuit seeks only money damages" and "does not seek any injunctive relief"; and (5) "neither of [the City's claims] 'arise under' CERCLA." (Doc. 21-1, at 7 (citations omitted).)

Removal jurisdiction based on a federal question is governed by the well-pleaded complaint rule. Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal., 463 U.S. 1, 11 (1983). Under the well-pleaded complaint rule, "[o]nly state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant . . . . The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987) (citations omitted); see also Merrell Dow Pharms. Inc. v. Thompson, 478 U.S. 804, 809

n.6 (1986) ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced." (citations omitted)).   In plain terms, unless the face of a plaintiff's complaint states a federal question, a defendant may not remove a case to federal court based on federal question jurisdiction.   Kemp v. Int'l Bus. Machs. Corp., 109 F.3d 708, 712 (11th Cir. 1997).   As a result, neither a party's defenses nor its counterclaims can give rise to federal question jurisdiction.   Vaden v. Discover Bank, 556 U.S. 49, 60 (2009).

However, even where only state law claims are asserted in a complaint, the case "might still 'arise under' the laws of the United States if a well-pleaded complaint established that [the] right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties."   Franchise Tax Bd. of Cal., 463 U.S. at 13.   In other words, a claim "aris[es] under" federal law if it "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."   Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005); see also Hobbs v. Carter, No. CV 2:22-148, 2023 WL 2495762, at *3 (S.D. Ga. Mar. 14, 2023) ("In [the Eleventh Circuit], the accepted rule is that upon removal the court should inspect the complaint carefully to determine whether a federal claim is necessarily presented by

13

plaintiff, even if plaintiff has couched his pleadings exclusively in terms of state law.") (citations omitted).

Here, applying the well-pleaded complaint rule, the Court finds that the City's complaint does not, on its face, state a federal question because the two claims it brings are state law claims.  (See Doc. 1-1, at 158-162.)  Defendants do not seem to dispute there is no federal question on the face of the City's Complaint; instead, they argue "the City's claims necessarily raise disputed and substantial federal issues sufficient to support this Court's jurisdiction because (1) they constitute a challenge to a CERCLA cleanup, and (2) they seek contribution for response costs under CERCLA."  (Doc. 1, at 20.)  Therefore, the Court looks to the City's Complaint to determine whether the state law claims arise under federal law.

Although the City's Complaint references CERCLA and the Consent Decree,[5] "there is no specific request for enforcement, modification, or alteration of the requirements of the consent decree[]" or Defendants' remedial efforts.   (See Doc. 1-1, at 155-56); Abbo-Bradley v. City of Niagara Falls, No. 13-CV-487, 2013 WL 4505454, at *7 (W.D.N.Y. Aug. 22, 2013).  Moreover, the City's Complaint does not challenge the sufficiency or legality of Defendants' remedial efforts under CERCLA, nor does the City seek

---

[5] The City references the Consent Decree to allege Georgia Power "acknowledged joint responsibility for the mercury pollution of the Marshes of Glynn." (Doc. 1-1, at 155.)

14

injunctive relief that might conflict with the remedial efforts.[6]
(See Doc. 1-1.)   Accordingly, the state law claims do not
necessarily depend on the resolution of substantial questions
regarding liabilities or obligations imposed by the EPA under
CERCLA, and the Court lacks federal question jurisdiction over
this matter.

Moreover, Defendants also argue the Court has jurisdiction
because "Section 113(b) of CERCLA confers on the federal district
courts exclusive original jurisdiction over all controversies
arising under [CERCLA]."   (Doc. 1, at 21-22 (quoting 42 U.S.C.
§ 9613(b)) (quotation marks omitted).)   However, as already
discussed, the City's claims "do not expressly challenge the
effectiveness of [Defendants' cleanup], request modification of
. . . [any remedial efforts], or seek any specific action that
might conflict with the remediation plan," but "seek only to be
made whole for any harm proximately caused by defendants' conduct,
whether in performance of operation, maintenance, and monitoring
obligations with respect to the remedy, or during the [cleanup]."
See Abbo-Bradley, 2013 WL 4505454, at *10; see also Se. Tex. Env't,
L.L.C. v. BP Amoco Chem. Co., 329 F.Supp.2d 853, 871 (S.D. Tex.
2004) ("Because [p]laintiffs' claims bear only on the liability of

---

[6] The Court notes the City's Complaint states, "Defendants are liable for all
such remediation costs and damages," however, under each count and the prayer
for relief, the City only seeks punitive damages.   (See Doc. 1-1, at 156-57,
159, 162.)   Therefore, the Court construes the City's Complaint as seeking
punitive damages and not remediation costs.

individual defendants and not on the cleanup itself, the [c]ourt concludes that [p]laintiffs have not challenged a CERCLA cleanup."). Based on the foregoing, the Court also does not have jurisdiction under Section 113(b) of CERCLA.

3. Diversity Jurisdiction (28 U.S.C. § 1332)

Lastly, Defendants argue the City fraudulently joined Georgia Power to defeat diversity jurisdiction, and thus, the Court should disregard Georgia Power's citizenship and find there is diversity jurisdiction because the City and Honeywell are citizens of different states and the amount in controversy exceeds $75,000.00. (Doc. 1, at 8-9, 29.)   In its motion to remand, the City does not dispute the citizenships of the City or Honeywell or the amount in controversy; instead, it argues Georgia Power was not fraudulently joined. (Doc. 21-1, at 3-7.)

Diversity jurisdiction requires complete diversity, which means "*each* defendant is a citizen of a different state from *each* plaintiff." Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373 (1978) (emphasis in original).   However, "[f]raudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998).   In other words, courts must retain jurisdiction and "ignore the presence of the non-diverse defendant" when plaintiff joined a non-diverse party solely to defeat federal diversity jurisdiction. Stillwell v.

Allstate Ins. Co., 663 F.3d 1329, 1332 (11th Cir. 2011) (citation

omitted).   "In such a case, the plaintiff is said to have

'fraudulently joined' the non-diverse defendant."   McKenzie v.

King Am. Finishing, Inc., No. 6:12-cv-065, 2012 WL 5473498, at *1

(S.D. Ga. Nov. 9, 2012) (citing Stillwell, 663 F.3d at 1332).

> To establish fraudulent joinder, "the removing party has
> the burden of proving by clear and convincing evidence
> that either: (1) there is no possibility the plaintiff
> can establish a cause of action against the resident
> defendant; or (2) the plaintiff has fraudulently pled
> jurisdictional facts to bring the resident defendant
> into state court."

Stillwell, 663 F.3d at 1332 (quoting Crowe v. Coleman, 113 F.3d

1536, 1538 (11th Cir. 1997) (alterations adopted)).

With a motion to remand, "the district court must evaluate

the factual allegations in the light most favorable to the

plaintiff and must resolve any uncertainties about state

substantive law in favor of the plaintiff."   McKenzie, 2012 WL

5473498, at *2 (internal quotations and citation omitted).   The

court must "not [] weigh the merits of a plaintiff's claim beyond

determining whether it is an arguable one under state law."

Stillwell, 663 F.3d at 1333 (citation omitted).   Indeed, "[i]f

there is even a possibility that a state court would find that the

complaint states a cause of action against any one of the resident

defendants, the federal court must find that joinder was proper

and remand the case to state court."   Coker v. Amoco Oil Co., 709

F.2d 1433, 1440-41 (11th Cir. 1983) (citations omitted),

*superseded by statute on other grounds as stated in* Georgetown Manor, Inc. v. Ethan Allen, Inc., 991 F.2d 1533 (11th Cir. 1993).

"The burden of establishing fraudulent joinder is a heavy one, and such a claim must be supported by clear and convincing evidence." Ishmael v. Gen. Growth Props., Inc., No. CV 114-175, 2014 WL 7392516, at *2 (S.D. Ga. Dec. 29, 2014) (quoting Poll v. Deli Mgmt., Inc., No. 1:07-cv-959, 2007 WL 2460769, at *3 (N.D. Ga. Aug. 24, 2007)) (quotation marks omitted).  In addressing a fraudulent joinder claim, "this Court 'must necessarily look to the pleading standards applicable in state court, not the plausibility pleading standards prevailing in federal court.'" McKenzie, 2012 WL 5473498, at *3 (quoting Stillwell, 663 F.3d at 1334).  In contrast to the federal pleading standard, Georgia simply requires notice pleading.  See O.C.G.A. § 9-11-8.  Thus, "it is immaterial whether a pleading states conclusions or facts as long as fair notice is given, and the statement of claim is short and plain." Carley v. Lewis, 472 S.E.2d 109, 110-11 (Ga. Ct. App. 1996).

In their notice of removal, Defendants do not argue that the City fraudulently pled jurisdictional facts; instead, they argue Georgia Power was fraudulently joined because the City cannot prove a cause of action against Georgia Power under Georgia law for two reasons: (1) the City's claims are barred by the statute of limitations; (2) the City failed to allege the elements required

to state a claim for trespass and nuisance.   (Doc. 1, at 25-29.)
Accordingly, the Court must determine whether there exists a
"possibility that a state court would find that the complaint
states a cause of action against" Georgia Power.   See Coker, 709
F.2d at 1440-41.   The Court addresses each argument below to
determine whether Defendants meet their burden of establishing
fraudulent joinder.

     a. *Statute of Limitations*

    Defendants argue the City's claim against Georgia Power is
barred by the statute of limitations because "[t]he alleged
trespasses and nuisances from Georgia Power's operations meet the
definition of permanent nuisances – not continuing nuisances – as
they are alleged in the City's Complaint."   (Doc. 1, at 27.)
According to Defendants, the latest the City could have brought
its claims against Georgia Power was in 1976 "[b]ecause the City
alleges the mercury was emitted from a coal-fired plant, the latest
Georgia Power would have emitted the alleged mercury was 1972 –
the year Georgia Power ceased combusting coal at Plant McManus."
(Id.)  In its motion to remand, the City argues its claims are not
barred by the statute of limitations because the pollution caused
by the release of mercury "is a classic case of continuing
nuisances and continuing trespasses."   (Doc. 21-1, at 4.)   In
response, Defendants again argue the City's claims are actually

allegations of permanent nuisance and trespass and not continuing. (Doc. 25, at 4-8.)

Under Georgia law, trespass and nuisance claims are subject to a four-year statute of limitations.[7]   O.C.G.A § 9-3-30(a). "However, when the statute begins to run depends on the nature of the nuisance or trespass." City of Atlanta v. Carlisle, 858 S.E.2d 543, 545 (Ga. Ct. App. 2021), cert. denied (Nov. 2, 2021).  The Georgia Supreme Court provides guidance on whether a trespass or nuisance is permanent or continuing and when the statute of limitations begins to run:

> A nuisance, permanent and continuing in its character, the destruction or damage being at once complete upon the completion of the act by which the nuisance is created, gives but one right of action, which accrues immediately upon the creation of the nuisance, and against which the statute of limitations begins, from that time, to run.  Where a nuisance is not permanent in its character, but is one which can and should be abated by the person erecting or maintaining it, every continuance of the nuisance is a fresh nuisance for which a fresh action will lie. This action accrues at the time of such continuance, and against it the statute of limitations runs only from the time of such accrual.

City of Atlanta v. Kleber, 677 S.E.2d 134, 137 (Ga. 2009) (quoting City Council of Augusta v. Lombard, 28 S.E. 994, 994 (Ga. 1897)). However, "Georgia courts are not uniform in their distinction between permanent and continuing nuisances."   Crosson v.

---

[7] Although the statute only refers to a trespass claim, "[n]uisance and trespass are closely analogous claims," and "[t]herefore, it is appropriate to treat the accrual of claims of trespass and nuisance in similar fashion." Provident Mut. Life Ins. Co. of Philadelphia v. City of Atlanta, 938 F. Supp. 829, 836 (N.D. Ga. 1995) (citing Rinzler v. Folsom, 74 S.E.2d 661, 664 (Ga. 1953)).

Carrollton City Sch. Dist., 478 F. Supp. 3d 1255, 1265-66 (N.D. Ga. 2020) (comparing Camp v. Warrington, 182 S.E.2d 419, 420 (Ga. 1971) with Lombard, 28 S.E. at 994).   Moreover, "Georgia courts have found that the distinction between a permanent nuisance and a continuing nuisance has been referred to as one of the most baffling areas of the law."   Id. at 1266 (alterations adopted, citations and quotation marks omitted).   At this stage of the proceedings, the Court must resolve all doubts in favor of remand. Mann, 505 F. App'x at 856 (citation omitted).   With this in mind, the Court finds Defendants' statute of limitations argument unavailing because "[i]n the absence of clear precedent," Defendants fail to meet their burden of demonstrating with clear and convincing evidence that the City alleges permanent trespass and nuisance.   See Stephens v. Wal-Mart Stores E., LP, No. 5:09-CV-325, 2010 WL 1487213, at *2 (M.D. Ga. Apr. 12, 2010).   Given that there is no clear bright line rule on whether Georgia Power's conduct constitutes permanent or continuing nuisance and trespass, there is a possibility the statute of limitations does not bar the City's claim against Georgia Power.

b. *Elements of Trespass and Nuisance*

Defendants also argue the City fails to allege the required elements for trespass and nuisance.   (Doc. 1, at 27-29.) Specifically, in the removal notice, Defendants argue the City does not allege Georgia Power's conduct was intentional as required

21

for a trespass claim, and the City cannot establish a claim for nuisance because Georgia Power's alleged conduct was legal. (Id. at 28.)  In the motion to remand, the City argues it alleged that Georgia Power's conduct was intentional, and a claim for nuisance can be brought even when the conduct was legal. (Doc. 21-1, at 6-7.)   In response, Defendants argue the City's claims fail because the City's Complaint does not allege Georgia Power had the "right to abate," which Defendants contend is an essential element of a continuing trespass and nuisance claim. (Doc. 25, at 12.)

The Court looks to the City's Complaint to determine "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against" Georgia Power. Coker, 709 F.2d at 1440.  However, the Court does not weigh the merits of the case; instead, it only looks to see if the pleading requirements have been met under Georgia law. Stillwell, 663 F.3d at 1332; McKenzie, 2012 WL 5473498, at *3.  Under Georgia law, "[t]he true test is whether the pleading gives fair notice and states the elements of the claim plainly and succinctly . . . ." Carley, 472 S.E.2d at 111 (citation omitted).

Under Georgia law, "[a] property owner may bring an action for nuisance and trespass against one who contaminates his property with a hazardous substance." Sprayberry Crossing P'ship v. Phenix Supply Co., 617 S.E.2d 622, 624 (Ga. Ct. App. 2005) (citing Hoffman v. Atlanta Gas Light Co., 426 S.E.2d 387, 388 (Ga. Ct. App. 1992)).

Nuisance and trespass are tort claims, and thus, an essential element of both claims is a showing of proximate cause. <u>Alexander v. Hulsey Env't Servs., Inc.</u>, 702 S.E.2d 435, 439 (Ga. Ct. App. 2010) (citation omitted). Additionally, for a trespass claim, "the act of trespass must have been a voluntary, intentional act in that it intended the immediate consequences of the act, causing the trespass . . . ." <u>Lanier v. Burnette</u>, 538 S.E.2d 476, 480 (Ga. Ct. App. 2000) (citations omitted).

Here, the City's Complaint alleges "[t]he Georgia Power Plant was coal fired, and emitted mercury into the air, the waters and the marshes of Glynn County." (Doc. 1-1, at 154.) The City then alleges that this conduct is the actual and proximate cause of the City's injury, which is the contamination, or pollution, of the City's property with mercury. (<u>Id.</u> at 154, 159, 161.) Moreover, the Complaint also alleges "Defendants' conduct . . . showed willful misconduct, malice, wantonness, [or] oppression . . . ." (<u>Id.</u> at 159.) Based upon the allegations in the Complaint and the pleading standard under Georgia law, the Court finds there is a possibility that a state court could find the City states a cause of action against Georgia Power. The Court, at this stage, does not determine whether the City's claims against Georgia Power will succeed. <u>See Stillwell</u>, 663 F.3d at 1333. The Court also finds Defendants' argument that Georgia Power's alleged conduct was legal unavailing because O.C.G.A. § 41-1-1 provides that "[a]

23

nuisance is anything that causes hurt, inconvenience, or damage to another and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance." (See Doc. 1, at 28.)

Further, the Court is unconvinced by Defendants' argument that the City's claims fail because Georgia Power was not given the right to abate. (See Doc. 25, at 12-13.) Defendants cite three cases in support of their argument, but each of these cases address nuisance and trespass where the conduct causing the injury took place on a property outside the defendant's control, which is not the case here because the alleged conduct that caused the contamination was at Georgia Power's plant. (Id.); see Briggs & Stratton Corp. v. Concrete Sales & Servs., Inc., 971 F. Supp. 566, 573 (M.D. Ga. 1997) (finding a nuisance and trespass claim failed where the defendant had no legal right to enter the premise to correct the hazardous waste disposal activities); Corp. of Mercer Univ. v. Nat'l Gypsum Co., No. CIV.A. 85-126-3, 1986 WL 12447, at *6-7 (M.D. Ga. Mar. 9, 1986) (finding a nuisance and trespass claim failed where product causing the nuisance "was in *the possession and control of the plaintiff* from the time it purchased the . . . products") (emphasis added); Bodin v. Gill, 117 S.E.2d 325, 330-31 (finding a nuisance and trespass claim failed where the defendant "had no legal right to go upon the . . . property for the purpose of terminating the *cause* of the injury") (emphasis added). Additionally, other than these three cases, the Court is

24

unaware of any other court in Georgia that has imposed the "right to abate" as an essential element of nuisance and trespass claims. See Parker v. Scrap Metal Processors, Inc., 386 F.3d 993, 1016 n.29 (11th Cir. 2004) ("The fact that the [plaintiffs] prevented the defendants from coming onto the [plaintiffs'] property to clean up the debris does not prevent a finding of continuing nuisance"). Accordingly, the Court does not decide at this time whether the "right to abate" is an essential element of nuisance and trespass claims but finds that Defendants fail to support with clear and convincing evidence that the City had to allege in its Complaint that Georgia Power had a "right to abate." (See Doc. 25, at 12-13.)   Because the City's Complaint states the elements of trespass and nuisance and gives Georgia Power fair notice that it is being sued for releasing mercury into the City's property, Defendants' argument that the City fails to sufficiently allege its claims for trespass and nuisance is unavailing.

For the foregoing reasons, Defendants fail to meet their heavy burden of establishing fraudulent joinder with clear and convincing evidence.  As such, there is no diversity of citizenship in the case, and diversity jurisdiction does not exist. Accordingly, because Defendants fail to establish the three

jurisdictional grounds on which they based the removal, the Court lacks subject matter jurisdiction over this matter.[8]

## B. Request for Hearing

Defendants move, pursuant to Local Rule 7.2, for a hearing on the City's motion to remand.   (Doc. 26, at 1.)   Local Rule 7.2 states that motions shall generally be determined upon the motion and its supporting documents.  L.R. 7.2, SDGa.  However, the Local Rule does allow, at the District Judge's discretion, oral argument upon written request of either party.  Id.  Here, the Court finds oral argument unnecessary for the disposition of the motion to remand because of the extensive filings of the Parties. Accordingly, Defendant's request for hearing is **DENIED.**


### III. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Plaintiff's motion to remand (Doc. 21) is **GRANTED** and Defendants' request for hearing (Doc. 26) is **DENIED.**  The Clerk is **DIRECTED** to **REMAND** this case to the Superior Court of Glynn County, Georgia.  The Clerk is

---

[8] Defendants also based their removal on supplemental jurisdiction under 28 U.S.C. § 1367(a) "[t]o the extent any part of [the City]'s causes of action can be construed as non-federal."  (Doc. 1, at 1.)  However, as discussed herein, the Court does not have original jurisdiction over this matter, and in turn, it does not have supplement jurisdiction.  28 U.S.C. § 1367(a).

further **DIRECTED** to **TERMINATE** all remaining pending motions, if any, and **CLOSE** this case.

ORDER ENTERED at Augusta, Georgia, this ___1ST___ day of __September__, 2023.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA